**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **WALLACE BOUDREAUX,** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 08-01686** |
| | * | |
| **TRANSOCEAN DEEPWATER, INC.** | * | **SECTION "B"** |

**ORDER AND REASONS**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 33), is **DENIED**. Plaintiff's opposition to that motion (Rec. Doc. No. 34), and Defendant's reply (Rec. Doc. No. 39) were considered along with record evidence and applicable law. Further, considering also Defendant's Motion for Leave to File Counterclaim (Rec. Doc. No. 40), Plaintiff's opposition thereto (Rec. Doc. No. 41), and Defendant's reply (Rec. Doc. No. 45), it is ordered that the Motion for Leave to File Counterclaim is **GRANTED**.[1]

### A. MOTION FOR SUMMARY JUDGMENT

Summary Judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. *Impossible Electronics*

---

[1] We are grateful for the work on this case by Michael Drory, a University of Pennsylvania Law School extern with our Chambers.

*Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Id*.

The Jones Act provides that "a seaman injured in the course of employment . . . may, elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. Under the Jones Act, Transocean "must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff[s'] injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1076-77 (5th Cir. 1991). The burden of proving causation under the Jones Act is "very light" or "featherweight." *Zapata Haynie Corp. v. Arthur*, 980 F.2d 287, 289 (5th Cir. 1992). Questions of negligence in admiralty cases are treated as factual issues, and are thus subject to the clearly erroneous standard. *Id*.

With respect to the Jones Act negligence claim, there is a dispute of material fact that precludes granting Defendant's Motion for Summary Judgment. There is conflicting information regarding whether Barge Supervisor Maynard instructed Boudreaux to perform the task in a negligent way as Boudreaux alleges. In Calvin Martin's deposition he states that Maynard was not present during the verbal instruction meeting in the control room prior to the accident. (Rec. Doc. No. 33-3 at 3). Furthermore, Martin stated that nobody told him how they wanted him to do the job because he

"already had prior experience doing the job." (Rec. Doc. No. 33-3 at 4). However, in Wallace Boudreaux's deposition he states that it was Barge Supervisor Maynard who instructed exactly how to complete the task, including holding and balancing the Quicklink between their boots. (Rec. Doc. No. 33-2 at 31). As Plaintiff's claim is mostly based on the allegedly negligent instructions given by Mr. Maynard (Rec. Doc. No. 34 at 7), this conflict of material fact regarding said instructions precludes granting Defendant's Motion for Summary Judgment.

To establish a claim of unseaworthiness, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (citing *Jackson v. OMI Corp.*, 245 F.3d 525 (5th Cir. 2001). In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy. *Id*.

As discussed above, the same material issue of fact regarding whether Maynard gave faulty and unsafe instructions exists for the unseaworthiness claim as well.

Paramount to the question of adequate training is whether this was a routine task that one could expect a twenty-plus year veteran to accomplish without any additional training or instruction. Plaintiff Boudreaux stated in his deposition that he had never

worked with the Quicklink devices. (Rec. Doc. No. 33-2 at 33). Calvin Martin stated that there was routine maintenance done on the Quicklink devices but that he had never done the particular job in question. (Rec. Doc. No. 33-3 at 3). However, in a response to a question of whether anybody in the control room meeting told him how to do the job, he answered "[n]o, because I already had prior experience doing the job." (Rec. Doc. No. 33-3 at 4). In addition, OIM Bradley Vidrine stated that he didn't think that the Quicklink devices had been used except for when the ship was first commissioned in Korea. (Rec. Doc. No. 34-3 at 5,6). Vidrine also stated that Barge Supervisor Maynard had experience taking the Quicklinks apart and putting them back together, but also stated that no "specific training" would have been involved with the handling of the Quicklink device and that the manual tells you how to take it apart and how to put it together. (Rec. Doc. No. 33-4 at 6). Based on the above deposition testimony of Boudreaux, Martin, and Vidrine, it is not clear whether the crew was adequately trained to complete the task in question--specifically whether the task was of such routine nature that a veteran seaman should be expected to complete it without additional training or instruction.

### B. MOTION FOR LEAVE TO FILE COUNTERCLAIM

Since the time Boudreaux was injured in May 2005, Transocean has paid him approximately $276,263.36 in maintenance, cure, and wage advances. (Rec. Doc. No. 40-1 at 3). However, during

-4-

Transocean's investigation of Boudreaux's original claims and specifically its January 13, 2010 deposition of Dr. Howard Nelson (Rec. Doc. No. 26-3 at 5), it discovered that Plaintiff had concealed (1) prior treatment for lubosacral pain in 1997, 1998 and 2000; (2) an October 24, 2004 lumbar MRI that revealed an annular disc fissure at L4-5 and a disc protrusion at L5-S1 with neural impingement; and (3) a 50lb lifting restriction issued to him after the MRI by Dr. Howard Nelson, who performed a pre-employment physical for Diamond Offshore. (Rec. Doc. No. 40-1 at 3; *See also* Rec. Doc. No. 26-1 at 3). On February 4, 2010, counsel for Transocean sent a letter to counsel for Plaintiff reserving its rights to seek reimbursement and/or setoff of any amounts previously paid to plaintiff and affirmatively stated: "We will also file a counterclaim against Mr. Boudreaux to recoup maintenance and cure paid to date, or alternatively to secure a setoff against any judgment Mr. Boudreaux may receive against Transocean." (Rec. Doc No. 41 at 3,4).

On March 9, 2010 Transocean filed a Motion for Partial Summary Judgment seeking dismissal of Boudreaux's maintenance and cure claims. On April 7, 2010, this Court granted Defendant's Motion for Partial Summary Judgment on the *McCorpen*[2] defense and

---

[2] A Jones Act employer is not obligated to pay maintenance and/or cure when the seaman has willfully concealed a pre-existing medical condition that was material to the employer's decision to hire the seaman and there is a causal connection between the injury complained of and the withheld information. *See McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).

dismissed Boudreaux's maintenance and cure claims. (Rec. Doc. No. 30).

Under the Court's September 8, 2009 scheduling order the deadline for filing amendments to pleadings, third-party actions, cross-claims and counterclaims was October 8, 2009. (Rec. Doc. No. 41 at 3). On May 25, 2010 Defendant, Transocean, filed this Motion for Leave to File Counterclaim in order to recoup maintenance and cure it had previously paid to Plaintiff. According to the scheduling order all discovery should have been completed by June 14, 2010. (Rec. Doc. No. 41 at 4).

Defendant acknowledges that the legal viability of a claim for restitution of these payments is a *res nova* issue in the Fifth Circuit. (Rec. Doc. No. 40-1 at 3). Defendant cites *Vitcovich v. OCEAN ROVER*, a decision from the Ninth Circuit of Appeals holding a Jones Act employer was entitled to summary judgement awarding restitution of maintenance and cure based on Plaintiff's intentional concealment of his previous medical injury. (Rec. Doc. No. 40-1 at 5); *see Vitcovich v. OCEAN ROVER*, 1997 U.S. App. LEXIS 724 (9th Cir. 1997). In addition, Defendant cites three other district court cases that provide support for the counterclaim.[3]

---

[3] *See Crow v. Cooper Marine and Timberlands Corp.*, 2009 U.S. Dist. LEXIS 2950 (S.D. Ala.)(granting plaintiff's motion for partial summary judgment as to defendant's counterclaim for recoupment of all maintenance, cure, and unearned wages paid to plaintiff because defendant failed to present any evidence that plaintiff misrepresented his medical condition. Although analysis of the right to recoupment was unnecessary in light of this ruling, the *Crow* Court recognized the viability of a claim for recoupment and assumed that a claim for recoupment was viable in that circuit). Unlike the facts in *Crow*, this Court has already dismissed Boudreaux's claims for maintenance and cure. Boudreaux has been unjustly enriched due to his fraudulent conduct and should

(Rec. Doc. No. 40-1 at 6). Transocean also cites rules and statutes in the Longshoremen and Harbor Workers Compensation Act (LHWCA) and the Louisiana State Workers Compensation scheme which provide for reimbursement and/or restitution if the claim has been secured through misrepresentation or fraudulent conduct. (Rec. Doc. No. 40-1 at6-7). Regardless, Defendant argues that the current Motion for Leave to File Counterclaim does not seek a substantive ruling on Transocean's right to recover maintenance and cure; rather, it simply asks the Court, procedurally, to allow the filing of the counterclaim. (Rec. Doc. No. 42-1 at 4).

Alternatively, Defendant requests that the Court should at least allow the counterclaim and then sever it from the trial in August in order to allow Plaintiff to conduct additional discovery to address the issues raised by the proposed counterclaim, even though Defendant maintains that there is no such discovery to be had. (Rec. Doc. No. 42-1 at 4).

The issue contained in Defendant's counterclaim is *res nova* to this Circuit. However, the Motion for Leave to File Counterclaim will not decide the merits of the claim contained in the motion. Plaintiff Boudreaux willfully concealed a pre-existing medical

---

not be awarded for that fraud. *See also Souviney v. John E. Graham and Sons*, 1994 A.M.C. 1671 (S.D. Ala. 1994) (holding that defendant was entitled to recover the amount of maintenance and cure benefits paid to plaintiffs in light of plaintiff's intentional concealment of material facts about the same back injury for which he now sought recovery); *Quiming v. International Pacific Enterprises Limited*, 773 F.Supp. 230, 236 (D.C. Haw. 1990) (granting charterer's motion for summary judgment on its counterclaim holding that charter was entitled to recover over $30,000.00 paid in maintenance and cure because injured party failed to disclose material facts about a previous injury).

condition that was material to the employer's decision to hire the seaman; and there is a causal connection between the injury complained of and the withheld information. (Rec. Doc. Nos. 26, 29, 30); *See also McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968). For these reasons Transocean was not obligated to pay maintenance and/or cure. *Id.* Plaintiff attempts to characterize Defendant's late filing of the Motion for Leave to File Counterclaim as clandestine and unfair. However, it was Plaintiff's own act of concealing relevant medical history that is the root of this motion. There is "good cause" justification for allowing this late filing.

With trial almost two months away, Plaintiff will not suffer prejudice by allowing this purely legal counterclaim to be added. By granting this Motion for Leave to File Counterclaim we are not ruling on the legal viability of the counterclaim itself. This Court also reserves the right under Federal Rules of Civil Procedure 42(b) to sever the counterclaim at a later date if Plaintiff adequately shows prejudice from its late addition.

Accordingly, Defendant's Motion for Summary Judgment (Rec. Doc. No. 33) is **DENIED** and Defendant's Motion for Leave to File a Counterclaim (Rec. Doc. No. 40) is **GRANTED.**

New Orleans, Louisiana, this 29th day of June, 2010.

_____
UNITED STATES DISTRICT JUDGE